**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**       **CASE NO. 10-20198**

**v.**            **HONORABLE DENISE PAGE HOOD**

**TYREE DAVON WASHINGTON (D-1),**

    **Defendant.**
_____/

**ORDER DENYING DEFENDANT TYREE WASHINGTON'S MOTION TO SUPPRESS**
**IDENTIFICATION**

**I. INTRODUCTION**

  This matter is before the Court on Defendant Tyree Washington's Motion to Suppress

Identification [Docket No. 59, filed on December 29, 2010]. The Government filed a brief in

opposition of this motion [Docket No. 68, filed on January 7, 2011], to which Defendant

Washington filed a reply [Docket No. 72, filed on January 12, 2011]. The Government filed a

Surreply on January 13, 2011 [Docket No. 75].

**II. STATEMENT OF FACTS**

  In an indictment issued September 23, 2010, Defendant Tyree Washington,

"Defendant,"[1] is charged with aiding and abetting in a carjacking in violation of 18 U.S.C. §§

2119(1) & (2). Count 2 of the indictment charges Defendant with use of a firearm during and in

relation to a crime of violence, in violation of 18 U.S.C. § 924 (c). Count 5 of the indictment

charges Defendant with use of a firearm during and in relation to a crime of violence in violation

---

[1] Defendant is charged along with co-defendants William Beal and Christopher Richardson.

of 18 U.S.C. § 924(c). Count 8 of the indictment charges Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922 (g)(1).

Defendant is accused of participating in a carjacking that occurred on March 14, 2010 in Dearborn Heights, Michigan. According to testimony of the alleged victim, John Nesbitt ("Mr. Nesbitt"), Crystal Nesbitt ("Mrs. Nesbitt"), and their thirteen-year old son had just stepped out of their vehicle, when they were approached by Defendant. Defendant allegedly proceeded to threaten Mr. Nesbitt with a firearm and demand the keys to the vehicle, a 2009 Dodge Charger. Mr. Nesbitt claims that he and Defendant had a brief conversation during which Defendant demanded the keys from him and told him to "run his pockets." Mr. Nesbitt also alleges that Defendant "racked" his gun and pointed it at him, exclaiming "You think I'm playing with you?" Mr. Nesbitt reportedly told Washington that he did not have the keys, at which time Mr. Nesbitt's thirteen year-old son threw the keys at Defendant, who was reportedly standing between 8 and 12 feet away from Mr. Nesbitt. Mr. Nesbitt contends that during the entire exchange he had a clear view of Defendant. At the time, Mr. Nesbitt was wearing protective eyeglasses to prevent dust from entering into his eye. He had undergone eye surgery the previous month. Mr. Nesbitt claims that he could see Defendant clearly through the glasses. Defendant allegedly took the glasses from Mr. Nesbitt, presumably because he believed them to be of value. Following the exchange, Defendant struggled with the remote key pad used to open the vehicle. While Defendant struggled to open the vehicle, Mr. Nesbitt claims that he was able to further observe him. Defendant and his alleged co-defendant entered the 2009 Dodge Charger and drove away. Mr. Nesbitt claims that he watched Defendant as he drove away in the stolen vehicle and was able to get a "great" view of him. The police report does not contain a description of

Defendant provided by Mr. Nesbitt.  The stolen vehicle was discovered within six hours of the alleged carjacking.

Mrs. Nesbitt provided a description of the accused carjackers. On March 14, 2010, Mrs. Nesbitt described two carjackers, one with a light brown complexion and one with a dark brown complexion. The police report states that the two Defendants were both described as being approximately 20 years old, clean shaven and 5'6 and 5'7 respectively. Although a police report was completed in Dearborn Heights on March 14, 2010, it was not until August 17, 2010, almost five months later, that Mr. Nesbitt provided descriptions of the accused carjackers to the Detroit Police.

The subject of this motion is the identification made by Mr. Nesbitt on August 17, 2010 from a photographic line-up or "photo array." On August 17, 2010 Mr. Nesbitt was interviewed by Officers Scott Herzog ("Officer Herzog") and Anthony Gavel ("Officer Gavel"), both members of the FBI violent crimes task force. Mr. Nesbitt was interviewed at a Detroit police station located at Schaefer and Grand River. Mr. Nesbitt was first asked to describe the keys that were taken from his possession and was shown a photograph of a set of keys which he identified as being the keys that were stolen. In this interview Mr. Nesbitt also provided descriptions of the alleged suspects. He claimed that one suspect had a lighter brown complexion, a small beard, was about 5'9 and wore dark clothing. Mr. Nesbitt claimed that the other suspect had a darker complexion, was clean shaven (did not have facial hair), was about 5'7" and wore dark clothing. At the evidentiary hearing on June 17, 2011, Mr. Nesbitt described the assailant as a "young thug," and as being smaller than Mr. Nesbitt.

Prior to the presentation of the photo array at the police station, Mr. Nesbitt was given directions by the two officers. He was instructed to select the suspect that he identified as the

assailant. Mr. Nesbitt was told by the officers that the photographs could be affected by the lighting of the camera, and that some features such as hair and facial hair could be easily changed. He was told that if he saw the suspect to circle him, and if he did not recognize any subject, then that was not a problem.

Both Officer Herzog and Mr. Nesbitt claim that Mr. Nesbitt was able to immediately identify Defendant in the first photo array presented to him. Mr. Nesbitt circled the suspect and initialed his identification. Mr. Nesbitt was given two other photo arrays, with the same directions as the first. Mr. Nesbitt admitted that he was unable to identify any suspects in the subsequent photo arrays. Mr. Nesbitt testified that he never felt as if he was being coerced or forced into saying anything and that he made the identification voluntarily.  Finally, Mr. Nesbitt was not informed of which suspect he was to identify in each of the line-ups. He was only instructed to identify the suspect, if any, that he recognized.

## III.   APPLICABLE LAW & ANALYSIS

Defendant claims that the "procedure law enforcement used to obtain the identification was 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification' and as a result, any evidence of such identifications must be suppressed." *Simmons v. United States*, 390, U.S. 377, 384 (1968); [Doc. No. 59, Motion to Suppress Identification and Request for an Evidentiary Hearing, Page 3].

In the present matter, Defendant argues that in the photo array shown to Mr. Nesbitt he "appears to have the lightest skin of all the individuals." [Doc. No. 59, Motion to Suppress Identification and Request for an Evidentiary Hearing, Page 4]. Defendant further argues that "the lighting of the photo as reflected upon [him] would naturally lead any impartial viewer to

-4-

believe that Mr. Washington was the suspect." [Doc. No. 59, Motion to Suppress Identification and Request for an Evidentiary Hearing, Page 4].

The Government claims that the photo identification was proper. Testimony presented at the evidentiary hearing by Government witness Police Officer Donald Farris ("Officer Farris") details the process used for creating the photo array. Officer Farris used an electronic database to select photos for the photo array.  Officer Farris testified that he created the photo array by first entering the photo of the suspect, and subsequently adding photographs of people with characteristics similar to those of the accused. He explained that he uses a search tool to identify photos to add to the line-up. The search is completed by entering criteria and choosing among the photographs presented in the search. The photo array presented to Mr. Nesbitt included five other African American men, some who appear to have facial hair, and some without. Officer Farris conceded that while all six photos do not have identical characteristics, he does his best to include photographs with characteristics similar to those of the suspect's photograph. Officer Farris typically reviews several hundred photos to create an array of six.  He testified that adding too many criteria to the search can limit the number of possible photos to choose from for the array. Officer Farris also testified that witnesses are encouraged not to pay attention to characteristics in photographs that can be easily changed, such as facial hair and complexion. Officer Farris explained that complexion can be easily altered based on lighting conditions. Officer Farris claimed that as a result of the glare on Defendant's photo, he attempted to include other photos with a similar glare. Officer Farris used the most recent photo of Defendant Washington in the database.  In the photo array at issue, Officer Farris claimed that photos 1, 2, 4, and 5 all had a similar glare.

In order to assess the validity of a pretrial identification, the Court has established a two-step analysis. *Ledbetter v. Edwards,* 35 F.3d 1062, 1070-71 (6th Cir. 1994). The first step of the analysis "considers whether the procedure was unduly suggestive. The defendant bears the burden of proving this element." *Id.* Second, should the court find that the procedure was unduly suggestive, the totality of the circumstances are evaluated to determine whether the identification was reliable, regardless of the suggestiveness. The five factors to be considered are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the observation; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness when confronting the defendant; and (5) the length of time between the crime and the confrontation. *Id.*

Defendant has not demonstrated how the identification procedure was unduly suggestive. Defendant claims that he appears to have the lightest skin in the line-up, and that there is a glare on his photo that would bias any viewer of the photo. [Doc. No. 59, Motion to Suppress Identification and Request for an Evidentiary Hearing, Page 4]. The Government argues that while there does appear to be a glare on Defendant's photo, other photos included in the array have a similar glare. The bias against Defendant has not been adequately demonstrated to support a finding of undue suggestiveness. This claim fails.

The procedure used to make the identification has not been shown to be unduly suggestive. Testimony by Officer Farris, who created the photo array at issue, supports the finding that an unbiased and objective procedure was used to create the line-up. Officer Farris explained that he chose suspects whose physical characteristics closely resembled those of the Defendant. Mr. Nesbitt testified that at the time of the alleged carjacking the suspect had a small beard. The photo array included two photos that clearly had a beard, and three or four photos

that, on the Court's review, possibly had a beard.  Officer Farris thought that two photos, possibly three, depicted individuals with facial hair.  The fact that each picture does not clearly indicate a beard is insufficient to find that the procedure was unduly suggestive. Furthermore, according to the testimony, Mr. Nesbitt was informed that facial hair was easily altered. The Government argues that Mr. Nesbitt was never informed that any of the suspects were present in any of the three photo arrays that Mr. Nesbitt viewed. He was only instructed to circle a suspect if he found one to be present in the photo array.

The evidence presented by Defendant is insufficient to demonstrate an unduly suggestive procedure.  Defendant has failed to satisfy his claim regarding the suggestiveness of the process used to make the identification. Because he has failed to satisfy the first prong of the *Ledbetter* analysis, the test fails.

Even if Defendant had satisfied the first prong of the *Ledbetter* analysis, the totality of the circumstances supports a finding that the identification was reliable.  Mr. Nesbitt testified he was focused and had a "great" opportunity to observe Defendant while Defendant was demanding the car keys and while Defendant was at the vehicle, struggling with the keys.  Mr. Nesbitt had his attention on Defendant Washington during the robbery.  Mr. Nesbitt's prior description of Defendant supports his identification at the photo array.  Mr. Nesbitt also quickly and with certainty selected Defendant from the photo array even though it was conducted some five months after the incident.  The Court finds that, based on the totality of the circumstances, the identification for the photo array is reliable.

## IV.    CONCLUSION

For the reasons provided above,

IT IS ORDERED that the Defendant Tyree Washington's Motion to Suppress

Identification [Docket No. 59, filed on December 29, 2010] is DENIED.

                        S/Denise Page Hood
                        Denise Page Hood
                        United States District Judge

Dated: July 29, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 29, 2011, by electronic and/or ordinary mail.

                        S/Johnetta Curry for LaShawn R. Saulsberry
                        Case Manager